UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNIE RAY RICH,

      Petitioner,

                                       Case No. 1:02-cv-317

v.                                   Hon. Gordon J. Quist

UNITED STATES OF AMERICA,

      Respondent.

_____/

REPORT AND RECOMMENDATION

      Petitioner, a prisoner currently incarcerated at a federal correctional facility, has filed a motion to vacate his conviction and sentence, seeking habeas relief pursuant to 28 U.S.C. § 2255. The matter is now before the court on petitioner's § 2255 motion and his motion to amend (docket no. 67).

I.      Background

      The third superseding indictment, filed August 29, 1996, charged petitioner with the following crimes:

      Count 1.  From in or about 1993 to the date of the indictment: Conspiracy to possess with intent to distribute methamphetamine and/or amphetamine, Schedule II controlled substances, in violation of  21 U.S.C. §§  841(a)(1), 841(b)(1)(A)(viii) and  846.

      Count 2. On or about January 10, 1996: Possess with intent to distribute and distribute a quantity of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).

Count 3.  On or about February 29, 1996: Possess with intent to distribute and distribute a quantity of amphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).

Count 4.  On or about October 27, 1995: Possess in and affecting commerce approximately 400 rounds of ammunition after having previously been convicted of one or more crimes punishable by a term of imprisonment of more than one year, in violation of 18 U.S.C. § 922(g)(1).

Count 5.  On or about March 7, 1996: Possess in and affecting commerce a quantity of .22 caliber ammunition after having previously been convicted of one or more crimes punishable by a term of imprisonment of more than one year, in violation of 18 U.S.C. § 922(g)(1).

Count 6.  On or about March 7, 1996: Possess in and affecting commerce a .22 caliber FIE revolver, serial no. TR19315 after having previously been convicted of one or more crimes punishable by a term of imprisonment of more than one year, in violation of 18 U.S.C. § 922(g)(1).

Count 7.  In or about July 1995: Possess in and affecting commerce two .22 caliber derringers after having previously been convicted of one or more crimes punishable by a term of imprisonment of more than one year, in violation of 18 U.S.C. § 922(g)(1).

On September 17, 1996, a federal jury found petitioner guilty of all counts.  Rich was and  sentenced to 30 years imprisonment on each of Counts 1, 2 and 3, and 10 years imprisonment on each of counts 4, 5, 6 and 7.  Sent. Trans. at 18.  The Sixth Circuit set forth the factual background as follows:

2

The facts underlying the defendant's convictions are largely undisputed. Evidence at trial indicated that Rich began selling methamphetamine from his home shortly after his release from prison in October 1993 and continued until his arrest in March 1996. The government produced some 20 witnesses, who testified that Rich was the president of the Grand Rapids chapter of a motorcycle club called the Devil's Disciples; that he frequently sold quantities of methamphetamine to them and to many other persons; that he kept guns in his home and on his person; that he traveled to Detroit and to Port Huron to obtain large quantities of drugs; that he supplied methamphetamine for other people to sell (in one case, as much as 2 1/2 pounds); that he bought his home for $10,000 in cash; and that he regularly carried large amounts of cash in his pockets. There was also testimony that after his arrest and while incarcerated, Rich directed certain persons to remove items, including a safe, from his home, to collect outstanding debts from drug clients, and to complete drug transactions.

Federal agents testified that pursuant to two valid search warrants, they seized from Rich's home over 400 rounds of ammunition, quantities of drug "cutting" agents, a bulletproof vest, small quantities of drugs, small plastic baggies, two guns, and $2,618 in cash from a pocket of Rich's jeans. Finally, Chalmer "Jim" Norris testified to his participation in two government-controlled purchases of drugs from Rich and from Rich's girlfriend. Norris bought and used drugs from Rich frequently in September and October 1995. He testified that he stopped using drugs after his arrest in October 1995 and did not purchase drugs again until the January and February 1996 controlled buys arranged by the government for this case.

*United States v. Rich*, No. 97-1020, 2000 WL 92269 at *1 (6th Cir. Jan. 19, 2000).

The Sixth Circuit Court of Appeals affirmed petitioner's conviction and sentence on January 19, 2000. *Id.* The United States Supreme Court denied petitioner's request for an "Extraordinary Writ of Mandamus" on January 8, 2001 and denied a motion for a rehearing. *In re Rich*, No. 00-7225, 531 U.S. 1068 (Jan. 8, 2001) and 532 U.S. 938 (March 19, 2001). The Supreme Court also denied his request for a writ of certiorari on May 14, 2001. *Rich v. United States*, No. 00-9413, 532 U.S. 1033 (May 14, 2001).

On May 8, 2002, petitioner filed a motion to vacate his conviction and sentence pursuant to § 2255, setting forth eight grounds for relief:

1.      The indictment was defective for failing to charge a specific drug amount, and no drug amount was submitted to the jury proven beyond a reasonable doubt.

2.      Rich is actually innocent of being a felon in possession of [a] firearm, due to his [k]ey [c]ivil [c]ights [w]ere [r]estored [u]nder Michigan Law.

3.      Appellate Counsel was ineffective for failing to raise on direct appeal that admitting evidence of the nature of the prior conviction despite Rich's offer to stipulate to his conviction felon status, violated his rights.

4.      Trial Counsel was ineffective for failing to object to, and appellate counsel was ineffective for failing to raise on direct appeal, Rich being sentenced for Schedule II methamphetamine (liquid injectable) "powder" methamphetamine.

5.      Counsel was ineffective for failing to object at trial or raise on direct appeal that, though the indictment on count one charged a multiple of object conspiracy (amphetamine and methamphetamine) and the jury returned only a general verdict, Rich was sentenced for the drug carrying the highest maximum statutory penalty.

6.      Counsel was ineffective for failing to object at trial, or raise on direct appeal, the impermissible misjoin[d]er of the felon in possession of a firearm charge with the drug offenses.

7.      Counsel was ineffective for failing to raise at trial, or on appeal the prejudicial admission of Rich's motorcycle "gang" affiliation, in violation of Rule 403 and 404(b), Fed. R. Evid.

8.      Rich's Convictions and Sentences in Counts 1-8 of the Third Superseding Indictment are Unconstitutional Under the Constitutional Rule of *Apprendi*.

Petitioner sought to amend his motion by adding 12 new claims.  In an order entered

August 11, 2003, the court denied the motion in part, but allowed petitioner to add one new claim:

X(B).   The United States District Court lacked jurisdiction to impose a sentence pursuant to 21 U.S.C. § 841(b) absent the

4

requirements of *Apprendi v. New Jersey.*

## II.    Motion to amend

In his most recent motion to amend (docket no. 67), petitioner contends that his §
2255 motion should be amended to include a claim brought under the Supreme Court's decision in
*United States v. Booker*, 543 U.S. --, 125 S.Ct. 738 (2005).  Specifically, petitioner contends that
he should be re-sentenced because "he was sentenced under the unconstitutional scheme of
mandatory Sentencing Guidelines," that "no drug quantities were charged in the indictment [or]
submitted to the jury and proved beyond a reasonable doubt," and that the court's use of the
mandatory Federal Sentencing Guidelines denied his fundamental constitutional rights under the
Sixth Amendment.  Petitioner contends that the court should amend his § 2255 motion because his
*Booker* claim relates back to his earlier *Apprendi* claims[1] and is based on a change of law.

Motions to amend § 2255 petitions are governed by FED. R. CIV. P.  15.  *See United
States v. Hicks*, 283 F.3d 380, 383 (D.C. Cir. 2002); *Oleson v. United States*, No. 00-1938, 2001 WL
1631828 at *2 (6th Cir. Dec. 14, 2001).  Once a responsive pleading has been filed, a petitioner may
amend his initial pleading "only by leave of court or by written consent of the adverse party; and
leave shall be freely given when justice so requires."  Rule 15.   However, justice does not require
the court to grant leave to file a futile amendment.  *See Alexander v. Margolis*, 921 F. Supp. 482, 485
(W.D. Mich. 1995), *aff'd* 98 F. 3d 1341 (6th Cir. 1996) ( "[i]f the amendment will be futile . . .
justice does not require the court to grant leave").  *See generally,  Moss v. United States*, 323 F.3d
445, 476 (6th Cir.), *cert. den.* 540 U.S. 879 (2003); *Hahn v. Star Bank*, 190 F. 3d 708, 715-718 (6th

---

[1]  *See* issues 1, 8 and X(B).

Cir. 1999); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 995-96 (6th Cir. 1994).

In the present case, justice does not require the court to amend the petition to include a claim under the newly-announced rule in *Booker*.   Petitioner's proposed claim is futile, because the *Booker* decision does not apply retroactively to a collateral attack on his convictions pursuant to § 2255.  As a general rule, "new constitutional decisions are not applied retroactively to cases that were finalized prior to a new Supreme Court decision." *Goode v. United States*, 305 F.3d 378, 383 (6th Cir. 2002).  Petitioner's case was finalized when the Supreme Court denied his request for a writ of certiorari on May 14, 2001.  *Rich*, 532 U.S. 1033.  *Booker* was decided more than 3 1/2 years later on January 12, 2005. *See Booker*, 125 S. Ct. 738.  The Sixth Circuit has held that *Booker* "does not apply retroactively in collateral proceedings." *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005). *Accord, Guzman v. United States*, -- F.3d --, 2005 WL 803214 at *4 (2nd Cir. April 8, 2005) ("*Booker* is not retroactive, *i.e.*, it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that *Booker* was issued"); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005) ("*Booker's* constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review"); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) ("*Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005").  Accordingly, the undersigned recommends that petitioner's motion to amend (docket no. 67) be DENIED.[2]

---

[2]  On July 16, 2004, petitioner filed a "Notice of Supplemental Authority," advising the court of the Supreme Court's decision regarding state sentencing guidelines in *Blakely v. Washington*, -- U.S. --, 124 S. Ct. 2531(2004).  However, because the Supreme Court explicitly resolved federal sentencing issues in

III.     **Standard of review for § 2255 claims**

An action brought pursuant to 28 U.S.C. § 2255 is "an independent and collateral inquiry into the validity of the conviction."  *United States v. Hayman*, 342 U.S. 205, 222 (1952). The statutory section allows a federal prisoner to challenge a sentence imposed in violation of the Constitution or laws of the United States.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not the guilt or innocence of a defendant that is at issue in a § 2255 proceeding, but rather the validity and fairness of the proceedings against him.  *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980).

A petitioner is entitled to habeas relief under § 2255 on the basis of constitutional grounds if the record reflects an error of constitutional magnitude which had a substantial and injurious effect on the jury's verdict or the petitioner's plea.  *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  To establish a right to habeas relief on nonconstitutional error (i.e., statutory or rule error, such as under the federal sentencing guidelines), the record still must reflect an error of constitutional dimension, such as a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.  *See Reed v. Farley,* 512 U.S. 339 (1994); *Nagi v. United States,* 90 F.3d 130, 133-34 (6th Cir. 1996).

A motion for habeas relief under § 2255 may not substitute for bringing a direct appeal.  *See Grant v. United States*, 72 F.3d 503 (6th Cir. 1996); *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984).  As a general rule, the failure to raise an argument at trial or on direct appeal

---

*Booker*, it is unnecessary for the court to address the applicability of the Blakely decision to petitioner's federal sentence. *See United States v. Frederick*, -- F.3d -- (May 5, 2005), slip op. at 9.

waives it for collateral review under § 2255 unless the petitioner can show cause and actual prejudice. *United States v. Frady*, 456 U.S. 152, 164-65 (1982); *Elzy v. United States*, 205 F.3d 882, 885 (6th Cir. 2000); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000). However, the "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

## IV.   Petitioner's claims

### A.   *Apprendi* claims

Petitioner has raised three claims related to the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (i.e., issues 1, 8 and X(B)). "*Apprendi* establishes that 'other than the facts of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Goode*, 305 F.3d at 382, *quoting Apprendi*, 530 U.S. at 490. In applying *Apprendi* to drug convictions under 21 U.S.C. § 841, the Sixth Circuit has held "that the quantity and type of drugs attributable to a defendant must be submitted to the jury for a determination beyond a reasonable doubt." *Goode*, 305 F.3d at 382 (citations omitted).

As an initial matter, respondent contends that *Apprendi* is inapplicable because it cannot be asserted retroactively in a collateral proceeding under § 2255. *See Regalado v. United States*, 334 F.3d 520, 526-27 (6th Cir.), *cert. den.* 540 U.S. 1024 (2003); *Goode*, 305 F.3d 378. The court rejects respondent's contention that petitioner seeks retroactive application of *Apprendi*. A conviction becomes final for purposes of collateral review under § 2255 at the conclusion of direct review. *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002). "If a § 2255 movant pursued

8

his direct appeal through to a petition for certiorari in the Supreme Court, direct review is concluded when the Supreme Court either denies the petition or decides the case." *Id.*  The *Apprendi* case was decided on June 26, 2000. Petitioner's direct appeal concluded when the Supreme Court denied his petition for writ of certiorari on May 14, 2001.  *Rich*, 532 U.S. 1033.   Because petitioner's direct appeal was pending when the *Apprendi* decision was issued, his claims were subject to the *Apprendi* decision.

Respondent also contends that petitioner's *Apprendi* claim was effectively rejected by the Supreme Court when it denied his writ for certiorari.  Answer at 3-4.  The court disagrees with this line of reasoning.  The Supreme Court's denial of a petition for writ of certiorari "simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter 'of sound judicial discretion.' "  *Maryland v. Baltimore Rado Show*, 338 U.S. 912, 917 (1950) (Frankfurter, J).  *See also, Hopfmann v. Connolly*, 471 .S. 459, 461 (1985) (noting that denial of certiorari has no precedential effect).

Given these considerations, the court will address the merits of petitioner's *Apprendi* claims.

   **1.     The indictment was defective for failing to charge a specific drug amount, and no drug amount was submitted to the jury proven beyond a reasonable doubt [Ground 1].**

   **3.     Rich's Convictions and Sentences in Counts 1-8 of the Third Superseding Indictment are Unconstitutional Under the Constitutional Rule of *Apprendi* [Ground 8].**

Petitioner contends that no drug quantities were charged in the indictment, submitted to the jury, or proved beyond a reasonable doubt, and that his sentence was enhanced under 21 U.S.C. § 851 "for having previously been convicted for a felony drug crime." Motion to Vacate at

9

8.  Petitioner contends that this violated *Apprendi*, because the only drug amount found by the jury was a measurable amount, his proper base offense level under the guidelines (U.S.S.G. § 2 D1.1.) was 12, and this base offense level, combined with his criminal history level of VI, resulted in a maximum guideline range of 30 to 37 months.  *Id.* at 10.

For Counts 1, 2 and 3 (conspiracy to possess with intent to distribute methamphetamine and/or amphetamine, distribution of methamphetamine, and distribution of amphetamine) , petitioner's base level offense was determined under U.S.S.G. § 4B1.1, to be 34. See Presentence Investigation Report (PSR) at 13.  The base level was increased 2 levels due to petitioner's possession of dangerous weapons and ammunition in connection with the distribution of controlled substances and 4 levels for his role in the offense in directing five or more participants in the distribution of methamphetamine, resulting in an adjusted offense level of 40.  Further, petitioner's total offense level of 40 combined with a criminal history category VI resulted in a guidelines range of 360 months on Counts 1, 2 and 3.  *Id.*  In his reply, petitioner contends that even under the career offender category, § 4B1.1, his base offense level would be 32, not 34.  Reply at 2.

Respondent acknowledges that Counts 1, 2 and 3  did not allege a particular quantity of drugs.   However, a specific quantity of drugs is unnecessary to support these convictions. A conspiracy to possess any amount of methamphetamine or amphetamine, or to distribute any amount of methamphetamine or amphetamine,  are each crimes  punishable by a maximum sentence of  20 years in prison.  *See* 21 U.SC. §§ 841(a)(1), 841(b)(1)(C) and 846.[3]  This maximum sentence is

---

[3] Section 841(a)(1) provides in pertinent part that "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . ."  Section 841(b)(1)(C)  provides in pertinent part that "[i]n the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years . . . If any person commits such a violation after a prior conviction after a felony drug

extended to 30 years' imprisonment if the defendant has one or more prior felony drug convictions.

*Id.  See United States v. Duvall*, 272 F.3d 825, 830 (7th Cir. 2001) ("[t]he maximum sentence under

§ 841(b)(1)(C) is ordinarily 20 years, but if the defendant has a prior felony drug conviction, the

maximum is increased to 30 years"); *United States v. King*, 272 F.3d 366, 375 (6th Cir. 2001) (if no

drug quantity is specified, § 841(b)(1)(C) provides for a maximum prison term of 20 years, unless

the defendant had a prior felony drug conviction, in which case the maximum would be 30 years).

On September 4, 1996, a supplemental information charged petitioner with enhanced

penalties under § 841(b), stating that he "was previously convicted in the Circuit Court for the

County of Kent, Sate of Michigan, of attempted possession with intent to deliver LSD, M.C.L.

333.7401(1)(2)(b) and 750.92, by plea of guilty on June 23, 1982, and entry of judgment on August

11, 1982."  Supplemental Information (docket no. 113).  At sentencing, the court found that

petitioner had a prior felony drug conviction for possession with intent to deliver LSD. Sent. Trans.

at 12.  Petitioner does not dispute that his sentence was enhanced "for having previously been

convicted for a felony drug crime." Memorandum at 8.  "*Apprendi*, by its terms applies only where

the finding 'increases the penalty for a crime beyond the prescribed *statutory maximum*.'"  *United*

*States v. Lawrence*, 308 F.3d 623, 634 (6th Cir.2002), *quoting Apprendi*, 530 U.S. at 490 (emphasis

added). Because petitioner's sentences on Counts 1, 2 and 3 did not exceed the maximum prison

term of 30 years, the sentences did not violate *Apprendi.  See, e.g., United States v. Carter*, Nos. 00-

5855, 00-5879 and 00-5888, 2002 WL 1890132 at *11 (6th Cir. Aug. 15, 2002) (defendants'

---

conviction has become final, such person shall be sentenced to a term of imprisonment of not more than 30
years . . .).  Finally, § 846 provides in pertinent part that "[a]ny person who attempts or conspires to commit
any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the
commission of which was the object of the attempt or conspiracy."

sentences of 20 years' imprisonment did not violate *Apprendi,* even though no drug quantity was specified in the indictment, because the defendants' sentences fell within the statutory maximum sentence of 30 years as authorized by§ 841(b)(1)(C).

Because petitioner had been previously convicted of armed robbery, attempted possession with intent to deliver LSD, attempted felonious assault and felonious assault, and since the offense in this case involved the delivery of a controlled substance and petitioner was over 18 when he committed the crime, he was also a career offender within the meaning of § 4B1.1. That called for a base offense level of 34, regardless of drug quantity. Again, the adjustments brought the total offense level to 40. As Judge Gibson noted at sentencing, "no matter how we cut it," the sentencing range was the same. Sentencing Tr. at 13.

Petitioner's contention that an *Apprendi* violation resulted in an improper scoring and minimum sentence under the sentencing guidelines is without merit. "*Apprendi* does not purport to apply to penalties in excess of any particular range or based on any particular offense level under the Sentencing Guidelines." *United States v. Garcia,* 252 F.3d 838, 843 (6th Cir.2001). *See Lawrence*, 308 F.3d at 634 ("we have squarely held that *Apprendi* does not apply to the Guidelines").

**2.     The United States District Court lacked jurisdiction to impose a sentence pursuant to 21 U.S.C. § 841(b) absent the requirements of *Apprendi v. New Jersey* [Amended Issue X(B)].**

Next, petitioner contends that the court lacked jurisdiction to impose a 30-year sentence for an aggravated drug trafficking offense in violation of § 841(b) because he was not charged with this crime and there was no jury finding to support this sentence. Memorandum in support of motion to amend at 40-43 (docket no. 19). Petitioner contends that under § 841(b)(1)(C)

12

the maximum sentence for his offense, which involved an undetermined quantity of methamphetamine and/or amphetamine, is ten years. *Id.* at 43.

As an initial matter, petitioner's statement of the maximum penalty under § 841(b)(1)(C) is factually incorrect. The maximum penalty for a violation of § 841(b)(1)(C) is  20 years for a defendant without a prior conviction and 30 years for a defendant with one or more prior felony drug convictions. 21 U.S.C. § 841(b)(1)(C) ("In the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years . . .).  *See Goode*, 305 F.3d at 383 n. 4 ("[t]he statutory maximum under § 841(b)(1)(C) is thirty years because of Goode's two prior felony convictions"); *United States v. Duvall*, 272 F.3d 825, 829 (7th Cir. 2001) ("[t]he maximum sentence under § 841(b)(1)(C) is ordinarily 20 years, but if the defendant has a prior felony drug conviction, the maximum is increased to 30 years").

In addition, the failure to include the drug quantity in the indictment does not deprive the court of jurisdiction.  *See United States v. Cotton*, 535 U.S. 625, 631 (2002); *Regalado*, 334 F.3d at 526 n. 6.  "The rule of *Apprendi* does not create a jurisdictional problem for the federal district court to hear cases where the drug quantity is not specified in the indictment." *Goode*, 305 F.3d at 385-86.  Thus, a district court is not divested of jurisdiction where an indictment omitted  the drug type, quantity and the relevant penalty provision under which the defendant was charged. *Id.   See also McCoy v. United States*, 266 F.3d 1245, 154 (11th Cir. 2001) ("we conclude that a claim of *Apprendi* error is not jurisdictional"). Accordingly, petitioner's jurisdictional claim should be denied.

13

**B.      Actual innocence of felon in possession of a firearm [Ground 2].**

Next, petitioner contends that he was actually innocent of being a felon in possession of firearms or ammunition contrary to 18 U.S.C. § 922(g)(1)) because his right to possess firearms had been restored prior to these convictions.  Section 922(g)(1) provides in pertinent part as follows:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to  . . . possess in or affecting commerce, any firearm or ammunition.

A "crime punishable by imprisonment for a term exceeding one year" is defined by 18 U.S.C. § 921(a)(20) as follows:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Under § 921(a)(20), the law of the state of the conviction determines whether a convicted felon's right to possess firearms has been restored.  *Caron v. United States*, 524 U.S. 308, 316 (1998).  The final clause of § 921(a)(20), "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms," is referred to as the "unless" clause. *See United States v. Campbell*, 256 F.3d 381, 391 (6th Cir. 2001).  In determining the elements of the federal felon-in-possession statute, courts view the "unless" clause as an exception to the rule that a felon may possess firearms when essentially all of his former civil rights (i.e., right to vote, serve on a jury and hold public office) have been restored. *Campbell*, 256 F.3d at 391.

14

Under Michigan law, most of a convicted felon's rights (such as the right to vote, serve on a jury and hold public office) are restored when the felon is released from state custody. *Campbell*, 256 F.3d at 391; *Hampton v. United States*, 191 F.3d 695, 702 (6th Cir. 1999). However, Michigan law does not fully restore a felon's right to possess a firearm at the time the felon is released from state custody. *See* MCL § 750.224f; *Campbell*, 256 F.3d at 390-95. MCL § 750.244f, as amended in 1992, provides that a person convicted of a "specified felony" shall not possess a firearm in the state until five years after the person had successfully completed all conditions of probation or parole. MCL § 750.224f(2); *Campbell*, 256 F.3d at 393. The "specified felony" list included any felony that involved "the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." MCL § 750.224f(6)(i).

In 1991, petitioner was convicted of assault with a dangerous weapon (felonious assault), contrary to MCL § 750.82. Felonious assault is one of the "specified felonies" under MCL § 750.224f(6)(i). *See People v. Currie*, No. 187272, 1997 WL 33344002 (Mich. App. Oct. 28, 1997). Accordingly, under MCL § 750.224f(6)(i), petitioner was prohibited from possessing a firearm or ammunition for at least five years after his discharge from parole on December 23, 1994. *See* Parole Board Discharge, attached to petitioner's appendix as Exh. 1. Even if petitioner's felonious assault conviction was not a "specified felony" under MCL § 750.224f(6)(i), he would still be prohibited from possessing firearms and ammunition for three years after his discharge from parole. *See* MCL § 750.224f(1) ("a person convicted of a felony shall not possess . . . a firearm in this state until the expiration of 3 years" after paying all fines, serving all terms of imprisonment and

successfully completing all conditions of probation or parole). In addition, MCL § 28.424 requires that such a convicted felon apply to his county concealed weapons licensing board to have his general firearms rights restored. *See Campbell*, 256 F.3d at 393. Petitioner presents no evidence that he applied for a license to carry a concealed weapon.

The right of a convicted felon to possess firearms is determined as of the date of a charged offense under § 922(g)(1). *See United States v. Morgan*, 216 F.3d 557, 565-66 (6th Cir. 2000). In the present case, petitioner's firearms violations occurred on or about July 1995, October 27, 1995 and March 7, 1996. Third Superseding Indictment. Petitioner's right to possess firearms was not restored until December 23, 1999, five years after his discharge from parole. MCL § 750.224f(2). Even if the court viewed petitioner's crime as a non-specified felony, his right to possess firearms was not restored until December 23, 1997. MCL § 750.224f(1). In either event, petitioner's rights were not restored when he possessed firearms in 1995 and 1996.[4]

In his reply, petitioner contends that § 750.224f does not apply to him because it was enacted in 1992, approximately one year after his conviction. Reply at 2. The Michigan Court of

---

[4] Petitioner relies on *Gilliam v. United States*, No. 99-1347, 2000 WL 553919 (6th Cir. April 28, 2000) for the proposition that his right to possess a firearm was restored upon his release from prison. Memorandum at 12. In *Gilliam*, the court held that, under the circumstances of the case, a felon with prior convictions predating the enactment of MCL § 750.224f had his civil rights restored under Michigan law. However, the court agrees with respondent that the published decision in *Campbell* controls this issue. In *Campbell*, the court distinguished Gilliam as follows:

> *Gilliam* is also inapposite. *Gilliam* was charged as a felon-in-possession in 1991, one year *before* M.C.L. § 750.224f was passed. Moreover, his underlying conviction was a 1978 conviction for first-degree criminal sexual conduct. Although the case does not state when Gilliam was released from prison, it is likely that the existing eight-year restriction on Gilliams's right to possess a pistol in 1978 had already expired by the time Gilliam was charged as a felon in possession in 1991.

*Campbell*, 256 F.3d at 395 (emphasis in original).

16

Appeals rejected this argument in *People v. Tice*, 220 Mich. App. 47, 558 N.W.2d 245 (1996),

concluding that a conviction under the statute did not violate the ex post facto clauses under United

States and Michigan constitutions when applied to a defendant whose conviction occurred prior to

the enactment of the statute in 1992, because the punishment was assessed for conduct committed

after the enactment of the statute. *Tice*, 220 Mich. App. at 50-52. *See Hervey v. United States*, 105

F. Supp.2d 731, 735 (E.D. 2000) (concluding that § 750.224f(1) did not violate ex post facto clause

when applied to felon convicted prior to enactment of statute).

> Furthermore, in *Campbell*, the Sixth Circuit found *Tice* persuasive, but held that
>
>> even if the 1992 enactment of M.C.L. § 750.224f as applied to [the defendant] was unconstitutional, [the defendant's] rights to possess a firearm would not have been fully restored at the time he was charged as a felon in possession on July 16, 1997. At the time of [the defendant's] conviction in 1988, M.C.L. § 28.422 imposed an eight-year restriction on [the defendant's] ability to "purchase, carry, or transport a pistol." This restriction applied to [the defendant] when he was released from prison on November 14, 1989. The restriction would have continued until November 14, 1997, approximately four months after [the defendant's] felon-in-possession charge. Therefore, regardless of whether M.C.L. § 750.224f could be applied to [the defendant] at the time of his conviction, his right to possess firearms would still have been restricted and he would be subject to being a felon in possession pursuant to 18 U.S.C. § 922(g)(1) and the "unless clause" of 18 U.S.C. § 921(a)(20).

*Campbell*, 256 F.3d at 393-94 (footnote omitted). Applying the reasoning as set forth in *Campbell*,

petitioner would have been under a similar eight-year restriction when he was convicted in 1991.

Whether the court applies the rule as set forth in either *Campbell* or *Tice*, petitioner was barred from

possessing firearms in 1995 and 1996. Accordingly, petitioner was properly convicted of possessing

a firearm and ammunition contrary to § 922(g)(1).[5]

### C.    Ineffective assistance of counsel

Petitioner's remaining claims involve alleged ineffective assistance of trial and appellate counsel.  In *Strickland v. Washington.* 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.  "The Constitution does not guarantee every defendant a successful defense." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3 (6th Cir. 1998), *citing Strickland*, 466 U.S. at 690.  Neither does the Constitution guarantee petitioner "an excellent lawyer" or a "good lawyer." *Id.* at *5, *citing Strickland*, 466 U.S. at 687.  Rather,

> the Sixth Amendment right to the effective assistance of counsel entitles [petitioner] to nothing more than a "reasonably competent attorney" whose performance falls "within the range of competence demanded of attorneys in criminal cases."

*Id*.  A trial counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See  McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996);

---

[5] Finally, petitioner makes the bald assertion  that his counsel was ineffective for failing to raise his "actual innocence" issue. Memorandum at 12.  Petitioner's contention is without merit.  There was no basis for petitioner's counsel to raise an "actual innocence" defense at either the trial or appellate level.  Counsel cannot be found ineffective for failing to raise a meritless issue. *See Greenup v. United States*, 401 F.3d 758, 770 (6th Cir. 2005); *Willis v. Smith,* 351 F.3d 741, 745 (6th Cir. 2003).  *See* general discussion of petitioner's ineffective assistance of counsel claims set forth in § IV C, *infra*.

*O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994).  Accordingly, petitioner must "overcome a presumption that the challenged action might be considered sound trial strategy." *Id.*

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983).  On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52.   It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981).  "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.*  As a general rule, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting  Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986).  In this regard, appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Greenup*, 401 F.3d at 770; *Willis*, 351 F.3d at 745; *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

1.     **Appellate [c]ounsel was ineffective for failing to raise on direct appeal that admitting evidence of the nature of the prior conviction despite [petitioner's] offer to stipulate to his conviction felon status, violated his rights [Ground 3].**

Petitioner contends that his appellate counsel was ineffective:

> for failing to raise the fact that the [d]istrict [c]ourt erred by allowing the [g]overnment to introduce, at trial, copies of the underlying judgments of four (4) previous convictions upon which the felon in

> possession charges (Count 4, 5, 6 and 7) were based, even though
> [petitioner] offered to stipulate to that element of the charged offense,
> and that [a]ppellate [c]ounsel was ineffective for failing to raise this
> issue on appeal though specifically requested to do so by [petitioner].

Memorandum at 16-17.

Petitioner had four previous felony convictions: armed robbery (January 16, 1976); attempted possession with intent to deliver LSD (August 11, 1982); attempted felonious assault (April 10, 1989); and felonious assault (October 14, 1991). Presentence Investigation Report at 17, 19, 20-21. The government entered into evidence certified copies of the four judgments of conviction. Trial Trans. I at 426.

Petitioner contends that the court abused its discretion by rejecting his offer to stipulate to the prior conviction if the name or nature of the conviction "increases the risk of a verdict tainted by improper considerations and the purpose of the evidence is solely to prove the prior conviction element." Memorandum at 17. Petitioner contends that his prior convictions alerted the jury that

> he had (1) been found guilty at Jury trial of armed robbery in which
> a pistol was used and store employees beaten, (2) pled guilty to
> attempted possession with intent to deliver LSD, (3) pled guilty to
> attempted felonious assault in which a shotgun was fired at the victim
> and the victim was beaten and (4) pled guilty to yet another felonious
> assault whereby the victim was beaten.

*Id.* Petitioner contends that the prior convictions were prejudicial because they were used solely to prove the prior conviction element of § 922(g)(1), yet were for offenses involving firearms and drugs similar to those charged in the indictment. *Id.*

Petitioner's trial counsel raised this issue in a pre-trial motion, offering to stipulate "to the existence of a felony conviction" from petitioner's "short list" for purposes of the felon-in-possession counts and requesting that the court "not allow proof of multiple felonies." Trial Trans. I at 8-18. The government pointed out that it would be introducing petitioner's statement admitting that he is a four-time felon. *Id.* at 12. Petitioner's signed statement read as follows:

20

> I, Bennie Ray Rich, state that I reside at 664 high Street, Grand Rapids, Michigan.  My name is Bennie Ray Rich, and today a federal search warrant was served at my house.  In my house I had a .22-caliber, six-shot revolver with white handles.  I got that gun from a female I met recently in Grand Rapids.  I traded a clock for the gun, and I intended to drill and tap the end of the barrel and make a shifter for my motorcycle.  That is the only alteration I was going to make to the gun.  I got the registration card with the gun, and I think her name is on the registration.  I have been in state prison in Michigan four times and on parole four times.
>
> I used to sell meth or crank, but I haven't sold any for about one year.  When I sold it, I sold it for my own use.

Trial Trans. II at 637-38.   The court denied the motion, stating its belief that petitioner would not be unduly prejudiced by allowing the government to prove the four felony convictions, "because of the fact in this particular case [petitioner] has already admitted that he has four prior convictions." *Id.* at 17.

Petitioner relies on the decision in *Old Chief v. United States*, 519 U.S. 172, 174 (1997), for the proposition that the trial court abuses its discretion when it rejects a defendant's offer to stipulate to his status as a felon in possession for purposes of § 922(g)(1).  Memorandum at 16-17. The principal issue in *Old Chief* was the scope of a trial judge's discretion under FRE 403, which allows the judge to exclude relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  *Old Chief*, 519 U.S. at 180.   In *Old Chief*, the Supreme Court held that a district court abuses its discretion if it rejects a defendant's offer to concede a prior judgment and admits the full judgment record over the defendant's objection, when the name or nature of the prior offense raises a risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction.  *See Old Chief*, 519 U.S. at 178-92.

The Sixth Circuit has rejected the proposition that *Old Chief* created "a *per se* rule that it cannot be harmless when a jury is informed of a defendant's prior conviction or convictions for serious violent felonies." *United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir. 1998).  Rather,

a violation of the rule set forth in *Old Chief* is reviewed under a harmless error analysis to determine whether "it is more probable than not that the error materially affected the verdict." *Id.* In a case involving a stipulation of evidence, an error is considered harmless if it is "more probable than not that the same verdicts would have been delivered in this case had the district court accepted [the defendant's] stipulation." *Id.* at 1263.

As an initial matter, petitioner's offer to stipulate "to the existence of a felony conviction" is vague. The decision in *Old Chief* contemplates that a criminal defendant's offer to stipulate to a prior judgment that satisfies the necessary element of the charge, i.e., that such an offer is "conclusive evidence" to satisfy the prior felony conviction element of § 922(g)(1). *See id.* at 186. Here, petitioner contends that he was actually innocent of the felon-in-possession charge under the Michigan statutory scheme for restoring rights to felons. Given Michigan's scheme for restoring a convicted felon's right to possess firearms as set forth in MCL § 750.224f, both the nature and date of the prior felony conviction was relevant for purposes of establishing a conviction under § 922(g)(1). Unless petitioner was willing to stipulate to the second element of § 922(g)(1), rather than "to the existence of a felony conviction," then his stipulation was not the type of statement envisioned in *Old Chief*. In addition, the government was entitled to demonstrate the existence of a prior drug felony conviction to support the sentence enhancement contained in the supplemental information. In petitioner's case, it appears that he would have to stipulate to at least two separate felonies (i.e., the 1991 felonious assault conviction and the 1982 drug conviction) to satisfy the elements of the charged offenses. Accordingly, the court concludes that petitioner's offer to stipulate was not sufficient to fall within the rule announced in *Old Chief*.

Even if petitioner's proposed stipulation was sufficient to fall within the rule announced in *Old Chief*, the court concludes that the evidence of petitioner's four previous felony convictions was harmless and did not materially affect the verdict. As the trial court observed, the government was allowed to present petitioner's statement that he had four prior convictions, each of which resulted in a prison term and parole. Trial Trans. I at 17, II at 637-38. There was no

testimony regarding the underlying facts or nature of the convictions.  Rather, certified copies of the four convictions were entered into evidence as exhibits.  Trial Trans. I at 426.  Given petitioner's statement acknowledging the existence of the four convictions, the undersigned agrees with the trial court that admission of a certified copy of each conviction was not unduly prejudicial.

Furthermore, the trial judge limited the jury's consideration of these convictions.  In his instructions, the trial judge identified the elements of the felon-in-possession charge, which included the requirement that before petitioner possessed the firearm or ammunition, petitioner "had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense."  Trial Trans. II at 770.  The court instructed the jury that "the offenses of armed robbery, attempted possession of LSD with intent to deliver, attempted felonious assault, and felonious assault, are crimes punishable by imprisonment for a term exceeding one year under the laws of the State of Michigan."  *Id.*  Then, the court gave the following cautionary instruction to the jury:

> A separate crime or offense is charged in each count of the indictment.  Each charge and the evidence pertaining to it should be considered separately.  The fact that you may find the defendant guilty or not guilty as to one of the offenses charged should not control your verdict as to any other offense charged.
>
> I caution you, members of the jury, that you are here to determine from the evidence in this case whether the accused is guilty or not guilty.  The defendant is not on trial for any act or conduct not alleged in the indictment. . .

*Id.* at 770-71.  The court limited the jury's consideration of petitioner's past criminal record by instructing them that petitioner was charged with the crimes as set forth in the indictment and was "not on trial" for conduct "not alleged in the indictment."  Courts "presum[e] that jurors, conscious of the gravity of their task, attend closely to the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them."  *United States v. Olano*, 507 U.S. 725, 740 (1993), quoting *Francis v. Franklin*, 471 U.S. 307, 324, n. 9 (1985).

In addition, the government presented extensive evidence of petitioner's guilt. Indeed, the Sixth Circuit characterized the facts underlying his conviction as "largely undisputed." *See Rich*, No. 97-1020, 2000 WL 92269 at *1. Given this overwhelming evidence of guilt and the trial court's jury instruction, any possible error in admitting evidence of the four convictions was harmless. *See generally, Redding v. United States*, 105 F.3d 1254, 1255 (8th Cir. 1997) (court's refusal to accept defendant's stipulation of prior convictions was harmless error given the overwhelming evidence of guilt and the trial court's jury instruction not to consider the prior convictions as evidence of a general tendency to commit crimes).

Appellate counsel was not ineffective for failing to raise this issue, which, at most, amounted to harmless error. *See Greenup*, 401 F.3d at 770; *Willis*, 351 F.3d at 745; *Greer*, 264 F.3d at 676. Accordingly, petitioner's ineffective assistance of appellate counsel claim should be denied.

**2.   Trial Counsel was ineffective for failing to object to, and appellate counsel was ineffective for failing to raise on direct appeal, [petitioner] being sentenced for Schedule II methamphetamine (liquid injectable) "powder" methamphetamine [Ground 4].**

Next, petitioner contends that his counsel was ineffective for failing to object to him being sentenced for a violation involving Schedule II "liquid" methamphetamine rather than Schedule III "powder" methamphetamine. Memorandum at 20-21. Petitioner contends that his counsel's failure to object resulted in him receiving a harsher sentence applicable to a Schedule II controlled substance. *Id.* at 20-22. In this regard, the maximum penalty for a Schedule III controlled substance is only five years' imprisonment pursuant to 21 U.S.C. § 841(b)(1)(D). *Id.* at 22.

Petitioner contends that Congress intentionally separated the penalties applicable to injectable liquid methamphetamine from the "far less potent" powder form of methamphetamine. Memorandum at 21-23; 21 U.S.C. § 812. Section 812(A) establishes five schedules of controlled substances, to be known as Schedules I, II, III, IV and V. Section 812(C), the initial schedules of controlled substances, provides that "Schedules I, II, III, IV and V shall unless and until amended pursuant to Sections 811 of this Title, consist of the following drugs . . ." Petitioner contends that

while the United States Attorney General revised the regulations to reschedule methamphetamine as a Schedule II controlled substance, he failed to comply with Congress' intent, because § 812(c) was not amended as required under 21 U.S.C. § 811.  Memorandum at 25.

Petitioner's claim is without merit.  The Sixth Circuit has held that both injectable and non-injectable methamphetamine are properly designated as Schedule II controlled substances. *United States v. Pinkley*, No. 00-6138, 2001 WL 1355297 at * 1-2 (6th Cir. Oct. 26, 2001); *United States v. Schrock*, 855 F.2d 327, 333-32 (6th Cir. 1988) ("[p]ursuant to the authority granted by Congress in section 811, and in conformity with the procedural requirements, the Attorney General in 1974 redesignated noninjectable methamphetamine as a Schedule II controlled substance."). *See generally, United States v. Greenwood*, 974 F.2d 1449, 1472 (5th Cir. 1992) ("[s]ince the early1970s, as a matter of law, methamphetamine has been classified as a schedule II controlled substance").

Courts have repeatedly rejected claims that methamphetamine is a Schedule II controlled substance.  Counsel cannot be found ineffective for failing to raise this type of meritless issue. *Greenup*, 401 F.3d at 770; *Willis,* 351 F.3d at 745.   Accordingly, petitioner's claim that he received the ineffective assistance of counsel in violation of the Sixth Amendment fails.

**3.      Counsel was ineffective for failing to object at trial or raise on direct appeal that, though the indictment on count one charged a multiple of object conspiracy (amphetamine and methamphetamine) and the jury returned only a general verdict, [petitioner] was sentenced for the drug carrying the highest maximum statutory penalty [Ground 5].**

Next, petitioner contends that his counsel were ineffective for failing to contest his sentencing under Count 1, which charged him with a conspiracy "to possess with the intent to distribute and distribution of methamphetamine and/or amphetamine."   Memorandum at 28. Petitioner contends that because he was found guilty of a conspiracy to possess and distribute more than one controlled substance, he should have been sentenced for a conspiracy to distribute the controlled substance "that carries the most lenient statutorily prescribed sentence." *Id.*  Petitioner's

claim is based upon the distinction between liquid injectable methamphetamine (a Schedule II controlled substance) and amphetamine (a Schedule III controlled substance). *Id.*

Petitioner cites *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), for the proposition that "[w]hen a defendant is convicted under a general verdict for controlled substances conspiracy and more than one substance is involved, the Court must assume that the conviction is for conspiracy to possess and distribute the controlled substance that carries the most lenient statutorily prescribed sentence." Memorandum at 28. In *Dale*, the defendant was charged with a conspiracy involving multiple objects, i.e., distribution of marijuana and cocaine base. The court noted that the maximum sentence for conspiring to distribute a controlled substance depends on the controlled substance to be distributed, which, in Dale's case, would result in a maximum sentence of five years for the marijuana and 40 years for the crack. *Dale*, 178 F.3d at 432. The Sixth Circuit concluded that the district court committed plain error in using the statutory maximum penalty for crack (40 years) rather than marijuana (5 years) when the jury returned a general guilty verdict for the conspiracy count. *Id.* at 434.

Petitioner's claim that he should have been given a shorter sentence is based upon his contention that methamphetamine is a Schedule II controlled substance and that amphetamine is a Schedule III controlled substance. There is no such distinction. Both methamphetamine and amphetamine are Schedule II controlled substances. *United States v Anderson*, 184 F.3d 479, 480 (5th Cir. 1999)("amphetamine is a Schedule II substance"); *United States v Sullivan*, 967 F.3d 370, 373 (11th Cir. 1992)("amphetamine was properly classified as a Schedule II substance"). Consequently, a conspiracy conviction would subject petitioner to a maximum penalty of 30 years' imprisonment. The rule announced in *Dale* is inapplicable, because the objects of the conspiracy do not have two different maximum sentences. There is no legal basis for petitioner's claim. Counsel cannot be found ineffective for failing to raise this issue. *Greenup*, 401 F.3d at 770; *Willis*, 351 F.3d at 745. Accordingly, petitioner's claim that he received the ineffective assistance of counsel in violation of the Sixth Amendment fails.

26

**4.    Counsel was ineffective for failing to object at trial, or raise on direct appeal, the impermissible misjoin[d]er of the felon in possession of a firearm charge with the drug offenses [Ground 6].**

Next, petitioner contends that his counsel was ineffective for failing to sever the drug counts (Counts 1, 2 and 3) from the felon in possession of firearm counts (Counts 4, 5, 6 and 7). Memorandum at 29-30.  Petitioner contends that if the government had tried the drug counts separately, then such a course of action "would have severely limited, at trial, the admissibility of [petitioner's] prior convictions."  *Id.* at 30.  Petitioner contends that these counts were misjoined pursuant to Fed. Rules Crim. Proc. 8(a).  *Id.*

As an initial matter, petitioner's counsel moved to sever the claims shortly before trial as part of his attempt to exclude evidence of petitioner's four prior convictions.   Apparently, counsel's motion was prompted by the co-defendants' decisions to enter guilty pleas:

> This issue just recently came up.  I understand that under Rule 14, a motion for a severance of the fifth counts or felon-in-possession counts could have been made.  But I understand that pursuant to Rule 12 that should have been made prior to trial.  As this issue came up when we were getting ready here and exchanging jury instructions and I became aware of this particular issue, that motion has not been made.
>
> Now the strategy that prior counsel may have adopted -- and I have no disagreement with that -- changed, because we showed up for trial yesterday, and out of five co-defendants, four of them entered pleas and were taken out, and all of a sudden the game plan changed here. . . .

Trial Trans. I at 8-9.  In denying the motion the trial court ruled as follows:

> And also with regard to the joinder issue, the particular counts regarding the firearms and ammunition ha[ve] been alleged in the conspiracy.

*Id.* at 18.

Petitioner's claim that his appellate and trial counsel were ineffective for failing to sever the drug charges from the felon-in-possession charges should be denied. Rule 8(a) provides that:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Joinder under Rule 8(1) is permissive. *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001); *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983). "Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment." *United States v. Chavis*, 296 F.3d 450, 456-57 (6th Cir. 2002). In cases involving drug offenses, firearm and drug charges can be joined when they are "'sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan,' as when guns are used in connection with the drug offense or when both guns and drugs are uncovered in the same search." *Chavis*, 296 F.3d at 459, *quoting United States v. Gorecki*, 813 F.2d 40, 42 (3rd Cir. 1987). *See also Wirsing*, 719 F.2d at 863 ("[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate") (citations omitted).

In the present case, the drugs, guns and ammunition were sufficiently connected to allow joinder under Rule 8(a). Two valid search warrants resulted in the seizure from petitioner's home of "over 400 rounds of ammunition, quantities of drug 'cutting' agents, a bulletproof vest, small quantities of drugs, small plastic baggies, two guns, and $2,618 in cash from a pocket of [petitioner's] jeans." *United States v. Rich*, No. 97-1020, 2000 WL 92269 at *1 (6th Cir. Jan. 19, 2000). The drugs and guns, being discovered in the same search, were sufficiently connected to support joinder under Rule 8(a). *See Chavis*, 296 F.3d at 459; *Gorecki*, 813 F.2d at 42; *Wirsing*, 719 F.2d at 863. *See also, Graham*, 275 F.3d at 512 (where duplicative evidence would prove a conspiracy to manufacture marijuana, attempt to manufacture marijuana and carrying a firearm in relation to a drug trafficking crime, requiring the government to put on separate trials for these offenses would violate the spirit of Rule 8(a), "which is to promote the goals of trial convenience and judicial economy")(internal citations omitted).

Finally, the court rejects petitioner's separate claim that the .22 caliber revolver (the subject of Count 6) and the Derringers (the subject of Count 7) were to be used as ornaments on a motorcycle. Memorandum at 33. The elements of a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) are: (1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that the firearm had traveled in or affected interstate commerce. *See United States v. Moreno*, 933 F.2d 362, 372 n. 1 (6th Cir. 1991). Section 922(g) applies regardless of the reason that the felon possessed the firearm. A violation of § 922(g) is a general intent crime. *United States v. Brown*, 367 F.3d 549, 556 (6th Cir. 2004). "[The Sixth Circuit] has held that a violation of § 922(g) is a general intent crime, *United States v. Bennett*, 975 F.2d 305, 306 (6th Cir.1992), for which the government need not show intention but only the knowing commission of an act that the law makes a crime. *United States v. Farrow*, 198 F.3d 179, 187 n. 8 (6th Cir.1999)." *United States v. Twenty-Two Various Firearms*, No. 01-3329, 2002 WL 475256 at *2 (6th Cir. March 27, 2002). "[T]he only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm." *United States v. Mains*, 33 F.3d 1222, 1228 (10th Cir.1994). Petitioner does not claim that the .22 caliber pistol and the Derringers were not firearms. It is undisputed that petitioner possessed these firearms. The fact that petitioner intended to use the firearms as ornaments on a motorcycle is irrelevant to a conviction under § 922(g).

Petitioner has identified issues that have no merit. Petitioner's counsel was not ineffective for failing to raise such issues at the trial or appellate level. *See Greenup*, 401 F.3d at 770; *Willis,* 351 F.3d at 745. Accordingly, petitioner's claim that he received the ineffective assistance of counsel in violation of the Sixth Amendment fails.

5.    **Counsel was ineffective for failing to raise at trial, or on appeal the prejudicial admission of [petitioner's] motorcycle "gang" affiliation, in violation of Rule 403 and 404(b), Fed. R. Evid. [Ground 7].**

Next, petitioner contends that his trial counsel refused to object to admission of prejudicial evidence of petitioner's affiliation with a motorcycle "gang" and that his appellate

29

counsel refused to raise the issue on appeal.  Memorandum at 34.  Petitioner contends that this evidence was injected into the trial in violation of FRE 403.  *Id.*

   First, petitioner has not pointed out that the government used the word "gang" at trial. The only reference cited by petitioner is a portion of the opening statement in which the government stated that "during the time period covered by this indictment [petitioner] was the President of the Devil's Disciples Motorcycle Club here in Grand Rapids." Memorandum at 34; Trial Trans. I at 26.

   Second, evidence of gang affiliation is relevant and admissible in cases where the interrelationship between people is a central issue. *See United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999); *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996).  A central issue in this case involved the interrelationship between petitioner and witnesses that testified regarding his drug trafficking activities.  Prosecution witnesses Craig Horning, Jerry Brown and Greg Troupe were members of the motorcycle club. Trial Trans. I at 39-41, 67-70, 89-93.  Two other prosecution witnesses, Kim Helms and Michelle Kipp, had connections with the club.  Kim Helms testified that she visited a clubhouse and also made methamphetamine sold by the Devil's Disciples.  Trial Trans. I at 202, 272.  Michelle Kipp, had a relationship with a club member, Larry Morgan, and visited a clubhouse in Detroit where petitioner distributed methamphetamine.  Trial Trans. I at 69; II at 434, 445.  The relationship between petitioner and the witnesses is explained, in part, by their relationships to the  Devil's Disciples motorcycle club. The prosecution's reference to petitioner in his capacity as the president of the motorcycle club was relevant and admissible.  *See Gibbs*, 182 F.3d at 430; *Thomas*, 86 F.3d at 652.

   Petitioner presents no evidence that the government referred to the motorcycle club as a "gang."  In addition, the club is central to explaining the relationship between petitioner and several prosecution witnesses.  There was no basis for petitioner's counsel to raise the "gang affiliation" issue at either the trial or the appellate level.  Accordingly, petitioner's counsel was not ineffective.  *See Greenup*, 401 F.3d at 770; *Willis,* 351 F.3d at 745.

6.      **Additional errors of trial and appellate counsel**

Finally, petitioner raised four cursory allegations of ineffective assistance of trial and appellate counsel to demonstrate "additional errors" of counsel.  Memorandum at 37-38.  Petitioner provides no legal argument or factual support for any of these claims.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, the court deems these cursory assertions of error to be waived.

## V.      Recommendation

I respectfully recommend that petitioner's motion to amend (docket no. 67) and his motion for relief pursuant to § 2255 be DENIED.


Dated:  July 5, 2005                                /s/ Hugh W. Brenneman, Jr.
                                                    Hugh W. Brenneman, Jr.
                                                    United States Magistrate Judge




ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).